UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BOAGF Holdco LP, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:22-cv-07859-JLS-PD<br><br>**STIPULATION AND SUPPLEMENTAL PROTECTIVE ORDER REGARDING THIRD-PARTY MILLIMAN, INC.'S MG-ALFA SOFTWARE** |

WHEREAS, on January 25, 2023, Plaintiff BOAGF Holdco LP, ("Plaintiff") served Milliman, Inc. ("Milliman) with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action requesting, among other things, access to its MG-ALFA software;

WHEREAS, subject to the terms and conditions of this Stipulation and Supplemental Protective Order Regarding Third Party Milliman, Inc.'s MG-ALFA Software, Milliman has agreed to provide Plaintiff access to its MG-ALFA software; and

WHEREAS, the parties hereby stipulate and agree that Milliman will grant Plaintiff access to its MG-ALFA software as follows:

It is hereby ORDERED:

1. **Definitions**

    a. "Milliman" means Milliman, Inc.

    b. "Plaintiff" means BOAGF Holdco LP.

    c. "Software" means machine-executable code, printed listings of code, source code, documentation and related information, as well as any algorithms, formulas, methods, concepts, program logic, program architecture and/or coding techniques, embodied in the code; listings, documentation and/or information.

    d. "Proprietary Software" means any and all computer programs, including, but not limited to, MG-ALFA, which are (a) marked or otherwise identified to the Plaintiff as being proprietary to Milliman; and (b) are at any time delivered to the Plaintiff on behalf, and with the authorization of Milliman; together with all Software comprising, associated with or relating to such programs.

    e. "Use" or "Used" means, with respect to machine-executable Software, (a) entering and/or storing any portion of the Proprietary Software into or in a machine; and/or transmitting any portion of the Proprietary Software to a machine for processing; and/or compiling, executing, translating or interpreting any code or machine instructions contained in the Proprietary Software in connection with executing such code or instructions; and/or (d) displaying any of the Proprietary Software in connection with the processing of such code or machine instructions.

    f. "Authorized User" means a person executing the Proprietary Software on behalf of the Plaintiff.

    g. "User Manual(s)" means those user manuals and documentation, in paper or electronic form, which accompany the Proprietary Software delivered to Plaintiff by Milliman.

    h. "Program Patches" mean minor corrections to the Proprietary Software to correct deviations in the Proprietary Software in order for the Proprietary

Software to substantially conform to the User Manual(s) at the time of installation. Such Program Patches shall become part of the Proprietary Software.

   i. "Program Updates" mean new versions of, or additions to, the Proprietary Software by Milliman which improve its operating performance but do not add to or alter its basic function(s). Such Program Updates shall become part of the Proprietary Software.

   j. "Program Modifications" mean new versions of, or additions to, the Proprietary Software ·which, in Milliman's opinion, add to or improve the function(s) of the Proprietary Software, and new Software modules or products adapted to interact with the Proprietary Software to add to or improve the function(s) of the Proprietary Software. Milliman shall, at its sole discretion, determine what changes or additions to the Proprietary Software will be deemed Program Modifications, possibly requiring payment of additional fees.

  2. Milliman will provide its Proprietary Software, MG-ALFA Version: 11.6 to Plaintiff to allow Authorized Users to Use the Proprietary Software to examine particular actuarial files provided to Plaintiff in discovery in connection with this litigation.

  3. Milliman's Propriety Software shall be deemed "Confidential" in accordance with Paragraph 2.4 of the Stipulated Protective Order (Dkt. 39).

  4. Plaintiff shall request approval for each Authorized User from Milliman. Plaintiff's request shall include each proposed Authorized User's current employment.  In the event a proposed Authorized User is not employed by a firm that develops or sells competing software to MG-ALFA, Milliman's approval for such Authorized Users shall not be unreasonably withheld. In the event a proposed Authorized User is employed by a firm that develops or sells competing software to MG-ALFA, the parties agree to meet and confer in good faith about whether the proposed Authorized User is a competitor of Milliman and whether additional

protections to Milliman are appropriate as to that Authorized User, including whether such proposed Authorized User should not become an Authorized User. Within 2 business days after Plaintiff's request for approval of a proposed Authorized User, Milliman will notify Plaintiff if it believes such proposed Authorized User is employed by a firm that develops or sells competing software to MG-ALFA, and what additional protections it believes are appropriate as to that proposed Authorized User. Within 3 business days thereafter, if the parties are not able to resolve any dispute with respect to such Authorized User, the parties will request a pre-discovery motion conference with the Magistrate Judge to resolve the dispute with respect to such protections. Absent the mutual agreement of Milliman and the Plaintiff, or leave of Court, Plaintiff collectively will have no more than 15 Authorized Users at any given time. If Plaintiff wish to change the Authorized Users, Plaintiff shall, pursuant to the procedures and requirements of this paragraph, request approval for such replacement Authorized Users from Milliman.

5. Authorized Users may Use the Proprietary Software solely at a Designated Site(s), which is limited to the offices of Plaintiff's counsel and Authorized Users' offices, which will be identified along with Plaintiff's request for approval for each proposed Authorized User.

6. Notwithstanding anything to the contrary in the Stipulated Protective Order, Plaintiff and the Authorized Users shall not allow any persons to Use the Proprietary Software other than the Authorized Users, or other Persons listed in Paragraph 7.2 of the Stipulated Protective Order, Dkt. 39, who are acting under the direction and supervision of the Authorized Users. Other Persons listed in Section 7.2 of the Stipulated Protective Order, Dkt. 39, may observe the Use of the Proprietary Software by Authorized Users and view the results of the Use of the Proprietary Software by Authorized Users.

7. All Authorized Users shall sign an undertaking, in the form annexed as

an Exhibit hereto, acknowledging receipt of the Stipulated Protective Order and this Supplemental Protective Order, and shall agree to abide by their terms.

8. Plaintiff and the Authorized Users shall not decompile, translate, reverse engineer or generate source code with respect to the Proprietary Software, nor shall the Plaintiff or Authorized Users knowingly assist or encourage any third party to commit such acts. In the event that the Plaintiff or the Authorized Users become aware of any third party committing such acts, the Plaintiff and the Authorized Users shall promptly notify Milliman of the pertinent facts concerning such acts. In the event the Plaintiff or the Authorized Users decompile, translate, reverse engineer or generate source code with respect to the Proprietary Software, or the Plaintiff or the Authorized Users knowingly assist or encourage any third parties to commit such acts, Milliman retains its rights and remedies to claw back the Proprietary Software, require its deletion from the offending Plaintiff's/Authorized User(s) hardware devices, and to obtain legal or equitable relief, including damages and/or injunctive relief.

9. Milliman shall make all reasonable efforts to provide the Authorized Users, in a timely manner, with any Program Patches that Milliman is aware are necessary to substantially conform the Proprietary Software to the User Manual(s) at the time of installation. Milliman shall provide to the Authorized Users, subject to the terms and conditions of this Supplemental Protective Order, any Program Updates released to other licensees and deemed by Milliman to be relevant to the Proprietary Software

10. Milliman shall provide to Authorized Users, via telephone or e-mail and during regular business hours, consultation regarding proper Use of the Proprietary Software in conformance with the User Manual(s).

11. Milliman is not obligated to (i) interpret program results, perform actuarial modeling work, or provide expert actuarial assistance to the Plaintiff; (ii) assist with questions related to computer operating systems, computer hardware, and

peripherals which are not related to the use of the Proprietary Software; (iii) perform data debugging and/or correcting; (iv) perform services necessitated as a result of any cause other than authorized and proper use by the Authorized Users of the Proprietary Software, including, but not limited to neglect, abuse, unauthorized modification, unauthorized maintenance, electrical fire, water or other damage; or (v) provide Program Modifications and consultations regarding Program Modifications.

12. If requested by Plaintiff or any Authorized User, Milliman will provide Authorized Users with 2 days of training in the Use of the Proprietary Software. Such training, if feasible, will include a sample of 10 actuarial inputs from Transamerica Life Insurance Company ("TLIC") subject to Paragraph 11 of this Supplemental Protective Order. Such training will be provided in a time and manner mutually agreed to by the Plaintiff and Milliman. Such training will be scheduled following the entry of this Supplemental Protective Order and will be subject to the availability of Milliman personnel. If training occurs in person, Milliman's reasonable travel expenses for the training session will be reimbursed by the Plaintiff whose Authorized Users participate in the training. Milliman will be reimbursed for its fees in accordance with Paragraph 13 of this Supplemental Protective Order and for its reasonable travel expenses incurred in providing any additional training and support to Authorized Users.

13. The Plaintiff will reimburse Milliman for its fees reasonably incurred in providing training and support services to Authorized Users, as well as other services that relate directly to the functionality of the Proprietary Software and are performed at the Plaintiff's request. Plaintiff agrees to pay Milliman's current standard rates for MG-ALFA support and training that are in effect at the time such services are provided, which Milliman represents will not in this action exceed the hourly rate of $500 per person.

14. On a monthly basis, Milliman will provide Plaintiff with a statement

for all charges due. Statements will be sent to that Plaintiff's counsel of record. Payment shall be due within thirty (30) days of receipt of an invoice. Plaintiff shall pay Milliman interest on amounts not paid and more than sixty (60) days past due at the rate of 1.5% per month or such lower rate as may be the maximum rate permitted by law. If Plaintiff fails to pay, when due, any statement under this Supplemental Protective Order, Milliman shall have the right to withhold services if such failure to pay is not remedied within fifteen (15) days of receipt of written notice of such failure by Plaintiff.

15. Plaintiff shall erase the Proprietary Software from all of the Authorized Users' hardware devices used to operate the same no later than sixty (60) days after the final termination of this litigation by settlement or exhaustion of all appeals.

16. After the final termination of this litigation, within sixty (60) days of receiving a request to do so by Milliman, Authorized Users shall provide Milliman with a sworn statement attesting to their compliance with the terms of this Supplemental Protective Order, including a specific statement of compliance with paragraphs 6, 8, and 15.

17. The Court shall retain jurisdiction of any disputes concerning Milliman's compliance with the subpoena served on Milliman by Plaintiff on January 25, 2023 and this Supplemental Protective Order, provided that with respect to any disputes arising out of any alleged breach of Paragraphs 6, 8, and 15 of this Supplemental Protective Order by an Authorized User, Milliman retains its right, without prejudice to the rights of other Authorized User(s) to Use the Proprietary Software, to bring an action or claims in any available forum, for any and all available legal or equitable relief against the allegedly breaching Authorized User.

18. Nothing in this Supplemental Protective Order shall constitute an admission as to the propriety of Plaintiff's request for the Proprietary Software or a waiver of Milliman's or TLIC's right to object to any other discovery on any grounds.

19. In the course of performing its obligations under this Supplemental Protective Order – for example when Milliman is performing its obligations under Paragraphs 9, 10, and 12 of this Supplemental Protective Order-Milliman may obtain information about the Use of the Proprietary Software by Authorized Users. Milliman agrees not to disclose such information to anyone other than the Plaintiff and, specifically, agrees not to share such information with TLIC.

20. The parties agree to meet and confer in good faith to resolve, subject to paragraph 11 and 13, any technical difficulties that may arise in making Use of the Proprietary Software to access, view, and use relevant financial modeling files and associated input data as they were maintained by TLIC in the ordinary course of business, including difficulties in making Use of the Proprietary Software to reproduce TLIC's modeling results.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED: <u>March 31, 2023</u>

| | |
|---|---|
| /s/[Signed Manually by Christine Lee]<br>Christine J. Lee, WSBA #43231<br>Rodney L. Umberger, Jr., WSBA #24948<br>**WILLIAMS KASTNER**<br>601 Union Street, Suite 4100<br>Seattle WA  9810-2380<br>Telephone:   206-628-6600<br>Facsimile:    206-628-6611<br><br>*Attorneys for Milliman, Inc.* | /s/ *Steven Sklaver*<br>Steven Sklaver (237612)<br>ssklaver@susmangodfrey.com<br>Michael Gervais (330731)<br>mgervais@susmangodfrey.com<br>Glenn Bridgman (298134)<br>gbridgman@susmangodfrey.com<br>Jasjaap Sidhu (335862)<br>jsidhu@susmangodfrey.com<br>**SUSMAN GODFREY L.L.P.**<br>1900 Avenue of the Stars, 14th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 789-3100<br>Facsimile: (310) 789-3150 |

Seth Ard (pro hac vice)
sard@susmangodfrey.com
Ryan C. Kirkpatrick (243824)
rkirkpatrick@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.: 212-336-8330
Fax: 212-336-8340

*Attorneys for Plaintiff*

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

DATED: April 05, 2023

_____
Patricia Donahue
United States Magistrate Judge

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BOAGF Holdco LP, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:22-cv-07859-JLS-PD<br><br>**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY STIPULATION AND SUPPLEMENTAL PROTECTIVE ORDER REGARDING THIRD-PARTY MILLIMAN, INC.'S MG-ALFA SOFTWARE** |

I, _____, acknowledge that I have read and understand the Protective Order in these Actions and the Stipulation and Supplemental Protective Order Regarding Third-Party Milliman, Inc.'s MG-ALFA Software ("Supplemental Protective Order"), and agree to be bound by their terms. By acknowledging these obligations under the Protective Order and Supplemental Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Central District of California for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Stipulated Protective Order or Supplemental Protective Order could subject me

to punishment for contempt of Court and my violation of Paragraphs 7, 9, and 17 of the Supplemental Protective Order could subject me to other remedies Milliman may pursue in any available forum, for any available legal or equitable relief.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____